[Cite as *Buehner v. Cheselka*, 2022-Ohio-2687.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| MICHAEL BUEHNER, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 111165 |
| v. | : | |
| MICHAEL JOSEPH CHESELKA, JR., ET AL., | : | |
| Defendants-Appellants. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** August 4, 2022

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-19-922578

*Appearances:*

Randazzo Law, L.L.C., and Russell A. Randazzo, *for appellee.*

Michael J. Cheselka Jr., *pro se.*

EMANUELLA D. GROVES, J.:

{¶ 1} Defendant-appellant, Michael Cheselka ("Cheselka"), appeals the trial court's decision granting summary judgment in favor of plaintiff-appellee Michael Buehner ("Buehner") on his claim for legal malpractice. For the reasons set forth below, we affirm.

**Procedural and Factual History**

### I.      Backdrop

{¶ 2} For context, we will first provide a synopsis of the underlying case from which Buehner's legal malpractice action emanated.

{¶ 3} In July 2002, a jury found Buehner guilty of two counts of murder and one count of attempted murder in connection with the shooting death of Jerry Saunders ("Saunders") on May 24, 2001.[1] The trial court sentenced Buehner to an aggregate prison term of 18 years to life. In *State v. Buehner*, 8th Dist. Cuyahoga No. 81722, 2003-Ohio-3348 ("*Buehner I*"), we affirmed Buehner's two murder convictions, but reversed his conviction for attempted murder because of insufficient evidence.[2]

{¶ 4} More than a decade later, a family friend of Buehner made a public records request to the Cleveland Police Department ("CPD") concerning all police reports relating to Saunders's homicide investigation. The CPD produced over 30 reports, including one dated September 27, 2001, detailing an eyewitness account who expressed that the "occupants of the black pickup truck were all black males." Additionally, the report indicated that the eyewitness described the shooter as "a

---

[1] At the trial, the state presented testimony indicating that on May 24, 2001, Buehner shot and killed Saunders during a drug transaction. According to the state, Buehner, who is a white male, arrived at the scene of the shooting in a black pickup truck. He was sitting in the middle passenger's seat and was accompanied by an unidentified black male who was sitting in the passenger's seat, and Randy Price ("Price"), a white male, who was driving the pickup truck.

[2] Please see *Buehner I* for a detailed discussion of the underlying facts.

light complexed [sic] black male * * * hair in braided hairstyle, slim build 5′10″, in mid 20s."

{¶ 5} Equipped with this information, Buehner filed several motions for leave to file a motion for new trial and for postconviction relief. At times, Buehner filed those motions pro se and, at other times, he filed them with the assistance of counsel. Cheselka filed some of these motions, while Russell Randazzo ("Randazzo"), whom Buehner added later as counsel filed the others. Together, the motions argued that Buehner's constitutional right to due process was violated by the state's failure to produce the statements of several witnesses in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Specifically, Buehner asserted that one of the witnesses' statements contained exculpatory evidence.

{¶ 6} On August 31, 2017, the trial court denied Buehner's motion for new trial.[3] On November 1, 2018, in *State v. Buehner*, 8th Dist. Cuyahoga No. 106319,

---

[3] In denying Buehner's motion, the trial court stated in relevant part that: "[d]efendant has failed to demonstrate by clear and convincing proof that he was unavoidably prevented from discovery of the potential testimony of the witness, Debbie Anderson, as alleged by Defendant. Defendant's trial attorneys had knowledge of the existence of the witness and Defendant has not provided clear and convincing proof that the summary was not provided in discovery, no[r] that the trial attorneys could not have learned of the existence of her statement with[out] reasonable diligence. Significantly, missing from the trial attorneys' affidavit was an affirmative assertion that the police summary had not been provided in discovery. Likewise, the police summary of Ms. Anderson's oral statements is not new evidence because Defendant was not unavoidably prevented from discovering the facts relied on in the petition and motion. Furthermore, there is not clear and convincing evidence that Defendant would have been found not guilty but for the alleged failure to provide the police summary[.]"

2018-Ohio-4432, ¶ 32 ("*Buehner II*"), we reversed the trial court's judgment and remanded the matter for a hearing.[4]

**{¶ 7}** In November 2019, pursuant to our remand, the trial court held a hearing on Buehner's motion for new trial. In an order dated April 16, 2020, the trial court denied Buehner's motion for new trial.[5] Buehner appealed the trial court's decision. On December 16, 2021, in *State v. Buehner*, 8th Dist. Cuyahoga No. 109699, 2021-Ohio-4435 ("*Buehner III*"), we affirmed in part, reversed in part, and remanded the matter for a new trial.[6] At the time of writing this decision, Buehner was out on bond and awaiting a new trial, scheduled for August 22, 2022.

---

[4] In *Buehner II*, we found the undisclosed witness statements of Anderson and Jenkins were exculpatory and that Buehner was unavoidably prevented from discovering the evidence at issue. *Id*. at ¶ 32. Consequently, we remanded the matter for a hearing "to consider Buehner's motion for new trial and whether the newly discovered evidence is material under *Brady*, 373 U.S. 83, 84, 83 S.Ct. 1194, 10 L.Ed.2d 215." *Id*. at ¶ 33.

[5] The trial court concluded that no exculpatory evidence had been withheld from the defense, no exculpatory evidence existed, Buehner's trial counsel was not ineffective for failing to utilize evidence at trial, and the state did not elicit false testimony. The trial court also found that "[e]ven if some indication exists that information was not disclosed, its materiality to the outcome of this trial is doubtful."

[6] In *Buehner III*, we found that a reasonable probability exists that the jury would have reached a different decision if the exculpatory evidence had been known at trial. As such, we found the state's failure to disclose the statements of Anderson, Jenkins, and Mason constituted separate and distinct *Brady* violations that deprived Buehner of his right to due process. Consequently, the trial court erred by denying Buehner's motion for a new trial based on its determination that Buehner failed to establish a *Brady* violation.

**II. Civil Complaint**

{¶ 8} As noted in the synopsis above, Buehner filed several motions pro se and the others through Cheselka or Randazzo. Ultimately, the motions filed by Randazzo proved to be the most fruitful. On October 2, 2019, sprouting from his discontent with the way Cheselka handled the criminal case, Buehner filed a complaint for legal malpractice, breach of contract, unjust enrichment, and breach of fiduciary duty against Cheselka, Michael J. Cheselka, Jr., LLC, and Sarah R. Cofta ("Cofta").

{¶ 9} In the complaint, Buehner alleged that around July 15, 2014, he engaged Cheselka to provide legal services, as evinced through the Fee Agreement and Contract for Legal Services ("Fee Agreement") attached to the complaint as exhibit No. 1. Paragraph two of the attached Fee Agreement, which set forth the scope of the representation, was titled "Subject of the Contract" and included the following:

> Client hereby retains and employ Counsel to represent Client in regard to an appeal and all State Court proceedings including the Ohio Supreme Court proceedings in the following Case # CR-02-417994, for Michael Buehner.

The Fee Agreement also specified that "Client hereby agrees to pay Counsel $10,000 flat fee for said representation." Buehner alleged the entire $10,000 fee was paid pursuant to the payment structure detailed therein.

{¶ 10} Buehner alleged that on August 13, 2014, Cheselka entered a notice of appearance in Cuyahoga C.P. No. CR-02-417994, on his behalf; filed a motion for

leave to file amended motion for leave to file motion for new trial and amended postconviction petition; and filed no more than four other briefs or motions on his behalf through March 10, 2015. Buehner alleged, that apart from the foregoing, Cheselka made no attempts to request any records from the city of Cleveland, the Cuyahoga County Prosecutor's Office, the CPD, or any other entity which could be used in the filings. Cheselka failed to hire an investigator to investigate Buehner's innocence, or an investigator to contact former jurors regarding evidence that was withheld.

{¶ 11} Specifically, Buehner alleged that when the trial court denied the motion for new trial, Cheselka never communicated the ruling, nor communicated the need to file a notice of appeal of the ruling. On August 22, 2017, Buehner timely appealed the trial court's ruling. The appeal was perfected by Randazzo and not Cheselka.

{¶ 12} Buehner alleged that he had always maintained his innocence and, had [Randazzo] not filed the appeal, he would have lost all opportunities to appeal the trial court's ruling. Buehner alleged that Cheselka's failure to fully discharge his duties pursuant to the Fee Agreement and the Ohio Rules of Professional Conduct would have prevented him from the ability to obtain a new trial.

{¶ 13} Buehner alleged that Cheselka breached the terms of the Fee Agreement by failing to timely file a notice of appeal; that the failure fell below the standard of care of the legal profession and constituted professional malpractice.

Buehner alleged that as a direct and proximate cause of Cheselka's negligence, he had and continued to sustain damages.

{¶ 14} On January 16, 2020, Cheselka filed an answer and denied the allegations for lack of knowledge or information. On June 15, 2020, Cheselka filed a motion to dismiss Buehner's complaint for failure to state a claim for which relief can be granted. On June 29, 2020, Buehner filed his brief in opposition. On July 13, 2020, Cheselka filed a reply brief. On July 29, 2020, the trial court denied Cheselka's motion to dismiss.

{¶ 15} On July 10, 2020, while Cheselka's motion to dismiss was pending, Buehner filed motions to show cause, to compel, and for sanctions against Cheselka. In his brief in support, Buehner noted that in March 2020, he had issued written discovery including, requests for admissions, interrogatories, and requests for production. Buehner indicated that although Cheselka had requested, and the trial court had granted an extension of time in which to respond to discovery, Cheselka still had not responded.

{¶ 16} On August 6, 2020, Cheselka filed a motion to disqualify Randazzo and to quash the deposition request. Cheselka argued that Randazzo was a necessary witness, whose testimony was admissible and unavailable from any other sources. Additionally, Cheselka argued he should not be subject to providing testimony inappropriately and without his right to cross-examine. Buehner opposed the motion on the grounds that he, and not Randazzo, would have information relative to Cheselka's termination date.

{¶ 17} On November 23, 2020, after deeming Randazzo to be a necessary witness, the trial court[7] granted Cheselka's motion to disqualify Randazzo. On December 29, 2020, Buehner filed a motion for relief from the trial court's judgment disqualifying his attorney. On February 1, 2021, following the untimely passing of the judge who granted the motion to disqualify, the newly appointed judge granted Buehner's motion for relief from judgment. In granting the motion, which it appropriately construed as a motion for reconsideration because it sought relief from an interlocutory order, the trial court entered an in limine order preventing Randazzo from testifying.

{¶ 18} On April 29, 2021, Buehner filed a notice of Cheselka's failure to produce discovery responses in accordance with the trial court's February 25, 2021 order. Buehner noted that following a teleconference relating to the pending motion to compel, the trial court had ordered Cheselka to appear for his deposition by March 27, 2021. Buehner also noted that the trial court had ordered that prior to the deposition, Cheselka was to allow plaintiff's counsel to review the file relating to his representation of Buehner. Buehner further noted that the trial court had ordered that Cheselka comply by April 25, 2021, with all other discovery requests that had been pending since March 2020.

{¶ 19} Finally, Buehner requested that the trial court (1) deem all admissions submitted on March 18, 2020, which were unanswered, as admitted, (2) issue

---

[7] The judge passed away shortly after granting Cheselka's motion to disqualify Randazzo and a new judge was assigned to the case.

sanctions against Cheselka, including monetary sanctions for each day written discovery responses had been unanswered since June 26, 2020, in the amount of $4,100 per day, (3) order Cheselka to produce responses to interrogatories and requests for production of documents within seven days, (4) allow Buehner to recover all attorney fees for the time spent drafting all motions related to Cheselka's failure to provide discovery responses, and (5) any other sanctions the trial court deemed appropriate given the blatant disregard of the present and predecessors' prior order.

{¶ 20} On May 7, 2021, Cheselka filed his response to Buehner's notice, noting that he had arrived for his deposition with as much of Buehner's file that he was able to locate. On May 13, 2021, the trial court, having found that Cheselka failed to comply with its prior orders, granted default judgment on Buehner's claims. The trial court then scheduled a separate hearing to determine damages.

{¶ 21} On September 20, 2021, Cheselka filed a motion for relief from the default judgment, claiming that the judgment was not warranted and that the trial court was "misled" into finding that his participation in discovery was lacking. On September 27, 2021, Buehner filed a motion in opposition, reasserting that Cheselka had failed to comply with the trial court's prior orders. On September 28, 2021, the trial court conducted a telephonic hearing on Cheselka's motion for relief from the default judgment.

{¶ 22} On October 5, 2021, the trial court issued a journal entry indicating that it had mistakenly believed that Cheselka had failed to appear for his deposition,

scheduled March 27, 2021. However, the trial court indicated that it had properly found that Cheselka had failed to fully comply with the court's order to produce the entire file of the representation of Buehner, failed to provide written responses to Buehner's requests for admissions, and failed to provide written responses to Buehner's first set of interrogatories.

{¶ 23} The trial court's journal entry indicated that out of an abundance of caution, it was vacating its prior order of May 13, 2021, and issuing the following order:

> [Cheselka] has failed to fully comply with this Court's Order of February 25, 2021, by (1) failing to produce the entire contents of his file for the representation of Mr. Buehner, (2) failing to provide written responses to [Buehner's] Requests for Admissions, (3) failing to provide written responses to [Buehner's] First Set of Interrogatories, and (4) failing to provide all documents responsive to [Buehner's] Requests for Production of Documents. Therefore, [Cheselka] is in contempt of court. Rather than issue the sanction of Default Judgement against [Cheselka], this Court grants [Buehner's] prior request to deem his Requests for Admissions as admitted. This Court further Orders that [Cheselka] is precluded from utilizing or offering any evidence or testimony which has not been previously produced by him pursuant to this Court's February 26, 2021, Order and any such evidence or testimony shall be stricken from any dispositive motion or pleading and shall be inadmissible by [Cheselka] at trial.

{¶ 24} On November 4, 2021, Buehner filed a motion for summary judgment. In support, Buehner attached Cheselka's deposition, an affidavit and preliminary opinion of expert witness Amelia Bower ("Bower"), as well as various pleadings filed in the instant case and the underlying criminal case. On November 5, 2021, Cheselka filed a motion for summary judgment wherein he

argued that Buehner must validate all claims of legal malpractice with an expert witness. Simultaneously, Cheselka filed another motion to dismiss.

{¶ 25} On December 1, 2021, the trial court denied Cheselka's motion for summary judgment and the second motion to dismiss. The trial court granted Buehner's motion for summary judgment and awarded $164,403.56 in damages.

{¶ 26} Cheselka now appeals and assigns the following errors for review:

## Assignment of Error No. 1

The trial court erred and abused its discretion by (1) showing bias toward the defendant and (2) granting appellee's motion for summary judgment as the arguments made therein were not supported by sufficient evidence, were not justified by the facts, gave rise to genuine issues of material fact and were ruled upon without allowing appellant's right to due process of law as guaranteed by the fourteenth amendment to the United States Constitution.

## Assignment of Error No. 2

Any claim purporting malpractice in the instant matter is time-barred under the current statute of limitations.

**Law and Analysis**

{¶ 27} In the first assignment of error, Cheselka argues the trial court erred in granting Buehner's motion for summary judgment.

{¶ 28} To begin, Civ.R. 56 (C) provides that summary judgment shall be rendered if "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material

fact and that the moving party is entitled to judgment as a matter of law." Summary

judgment is proper where:

> (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his or her favor.

*Bohan v. McDonald Hopkins, L.L.C.*, 8th Dist. Cuyahoga No. 110060, 2021-Ohio-4131, ¶ 19, citing *Horton v. Harwick Chem. Corp.*, 73 Ohio St.3d 679, 653 N.E.2d 1196 (1995), paragraph three of the syllabus; *Zivich v. Mentor Soccer Club*, 82 Ohio St.3d 367, 696 N.E.2d 201 (1998).

{¶ 29} "The party moving for summary judgment bears the burden of demonstrating that no material issues of fact exist for trial." *Edvon v. Morales*, 8th Dist. Cuyahoga No. 106448, 2018-Ohio-5171, ¶ 17, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). If the movant satisfies the initial burden, then the nonmoving party has the burden to set forth specific facts that there remain genuine issues of material fact that would preclude summary judgment. *Id.* A trial court's grant of summary judgment is reviewed de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996).

{¶ 30} Preliminarily, to prevail on a legal malpractice claim, the plaintiff must establish "(1) an attorney-client relationship, (2) professional duty arising from that relationship, (3) breach of that duty, (4) proximate cause, (5) and damages." *Shoemaker v. Gindlesberger*, 118 Ohio St.3d 226, 2008-Ohio-2012, 887 N.E.2d 1167, ¶ 8, citing *Vahila v. Hall*, 77 Ohio St.3d 421, 427, 674 N.E.2d 1164

(1997); *Krahn v. Kinney*, 43 Ohio St.3d 103, 105, 538 N.E.2d 1058 (1989). Because the elements of a legal malpractice claim are stated in the conjunctive, the failure to establish any one element of the claim is fatal. *Estate of Hards v. Walton*, 8th Dist. Cuyahoga No. 93185, 2010-Ohio-3596, ¶ 7, citing *Williams-Roseman v. Owen*, 10th Dist. Franklin No. 99AP-871, 2000 Ohio App. LEXIS 4254 (Sept. 21, 2000).

{¶ 31} In the instant matter, of the above elements, the duty requirement of the first is typically established through the existence of some form of attorney-client relationship. *Natl. Union Fire Ins. Co. v. Wuerth*, 122 Ohio St.3d 594, 2009-Ohio-3601, 913 N.E.2d 939, ¶ 10. Cheselka does not dispute that there existed an attorney-client relationship. Indeed, Cheselka drafted the Fee Agreement and admitted that he was paid in full pursuant to its terms. Instead, Cheselka posits that Buehner replaced him with Randazzo, and argues that once Randazzo filed his notice of appearance on September 12, 2016, he was proverbially "off the case." However, our review of the record reveals that Cheselka was wholly mistaken in this belief.

{¶ 32} In addressing this notion, the trial court's well-reasoned opinion stated that it made the following findings of fact:

> 8) On September 12, 2016, Russell Randazzo Esq. entered a Notice of Appearance in Case No. Cr-02-417994 on behalf of Mr. Buehner. At no time was the Notice of Appearance a substitution of counsel for Mr. Buehner's then existing legal counsel Mr. Cheselka. Mr. Buehner intended to have two lawyers representing his interest in the Post-Conviction and Motion for Leave to file a Motion for New Trial issues. (See Exhibit 5, Affidavit of Michael Buehner.)

9) Cheselka does not recall a communication with Maryann Harrison or Mr. Buehner during which Mr. Buehner terminated Mr. Cheselka. (See Exhibit 1, Depo. Trans. Cheselka P. 44) Mr. Cheselka does not recall receiving a letter terminating the attorney-client relationship between he and Mr. Buehner. (See Exhibit 1, Depo. Trans. Cheselka P. 45.) Mr. Cheselka never filed a motion requesting to withdraw as legal counsel for Mr. Buehner.

10) Mr. Cheselka testified that [Randazzo] did not need to file a substitution of counsel to terminate Mr. Cheselka, rather the lack of communication by Mr. Buehner and [Randazzo's] notice of appearance was sufficient to terminate the legal services. (See Exhibit 1, Depo. Trans. Cheselka P. 64.)

* * *

12) Mr. Cheselka claims that Mr. Buehner stopped communicating with him regularly and that was part of his belief that he was terminated. (See Exhibit 1, Depo. Trans. Cheselka P. 64.) Mr. Cheselka admits that he did not reach out to Mr. Buehner to discuss the ongoing representation when Mr. Buehner's communication allegedly slowed.

13) On August 15, 2016, Mr. Buehner sent Mr. Cheselka correspondence addressing the ongoing representation. (See Exhibit 1, Depo. Trans. Cheselka P. 77-78.) Mr. Buehner never terminated Mr. Cheselka in that correspondence but was rather requesting more communication with his attorney. *Id.* Mr. Buehner stated: You and I have not had direct communication since before Sarah left, nor have I spoken with Kelly or anybody else from your office.

{¶ 33} The above findings of fact contradict Cheselka's belief that Randazzo's notice of appearance and lack of communication between himself and Buehner was evidence that he had been terminated. Despite Cheselka's contention, Buehner averred that Cheselka never contacted him to discuss whether Randazzo's appearance terminated their Fee Agreement or the attorney-client relationship. Critically, Buehner averred: "[h]ad Mr. Cheselka contacted me I would have told

him he was still my legal counsel as he has been paid to perform legal services for me well beyond the work he had performed."

{¶ 34} Here, nothing in the record supports Cheselka's contention that the attorney-client relationship had concluded when Randazzo entered an appearance in the case or had concluded by the lack of communication with Buehner or concluded by a combination of both factors. Both the Ohio Rules of Professional Conduct ("ORPC") and the Local Rules of Cuyahoga County required that Cheselka file a motion to withdraw from representing Buehner. (Prof.Cond.R 1.16 and Loc.R. 10.0). It is undisputed that Cheselka did not file a motion to withdraw as counsel; that he never notified Buehner after Randazzo filed his notice of appearance that he was no longer acting as his attorney; and that at the time Randazzo entered his appearance in the case, he did not file a motion to substitute himself as successor counsel in the matter.

{¶ 35} Thus, unmistakably, an attorney-client relationship existed giving rise to a professional duty flowing therefrom. Because the attorney-client relationship still existed, Cheselka was still obligated to perform the services outlined under paragraph two of the Fee Agreement. As such, we now proceed to discuss Cheselka's claim that he did not breach the professional duty owed under paragraph two of the Fee Agreement.

{¶ 36} Generally, expert testimony is required to sustain a claim of legal malpractice unless the conduct complained of is "'so obvious that it may be determined by the court as a matter of law, or is within the ordinary knowledge of a

lay person.'" *Richard C. Alkire Co., L.P.A. v. Alsfelder*, 8th Dist. Cuyahoga No. 104153, 2017-Ohio-1547, ¶ 11, quoting *Simmons v. Rauser & Assocs. L.P.A.*, 8th Dist. Cuyahoga No. 96386, 2011-Ohio-4510, ¶ 9, citing *Bloom v. Dieckmann*, 11 Ohio App.3d 202, 464 N.E.2d 187 (1st Dist.1983), syllabus; *McInnis v. Hyatt Legal Clinics*, 10 Ohio St.3d 112, 461 N.E.2d 1295 (1984).

{¶ 37} As previously stated, Buehner attached the affidavit and preliminary opinion of expert witness Bower to his motion for summary judgment. Bower detailed how Cheselka breached his professional duty under paragraph two of the Fee Agreement. In doing so, Bower noted that Randazzo, and not Cheselka, filed the May 1, 2017 motion for new trial, which the trial court denied without a hearing on August 31, 2017. Bower also noted that Cheselka did not file an appeal of the August 31, 2017 trial court decision. In fact, Cheselka did not communicate this unfavorable decision to Buehner and the need to timely appeal. Instead, Bower noted, it was Randazzo who perfected the appeal.

{¶ 38} Bower stated that Cheselka was contractually bound to represent Buehner through all phases of the case but failed to do so and failed to communicate with Buehner regarding the case, or alternatively seek to withdraw after Randazzo entered an appearance, thus breaching the terms of the Fee Agreement. Additionally, Bower stated that Cheselka did not investigate the events surrounding Buehner's conviction and did not pursue discovery with the state to challenge witness testimony regarding the events surrounding Buehner's conviction. Instead,

Bower stated, it was the discovery of that information by Randazzo that was pivotal in this court's favorable decision.

{¶ 39} Bower opined, based upon a reasonable degree of certainty, that Cheselka's conduct in representing Buehner fell below the standard of care. Bower further opined that Buehner has been damaged because of Cheselka's failed conduct.

{¶ 40} Here, it is undisputed that Cheselka breached his contractual obligation "to represent [Buehner] in regard to an appeal and all State Court proceedings including the Ohio Supreme Court proceedings in the following Case #CR-02-417994." It is undisputed that Cheselka failed to communicate to Buehner that the trial court had rendered an unfavorable ruling regarding the motion for new trial and the necessity of appealing the decision. As a result, Cheselka breached the standard of care.

{¶ 41} Moreover, the trial court aptly stated in its decision that "[n]o further expert testimony is required because the alleged breach of care is obvious from the record in this case and as concluded by [Bower]. *McInnis*[, 10 Ohio St.3d 112, 461 N.E.2d 1295]." The trial court continued, stating that

> [t]here are a number of Ohio appellate courts that have found that an attorney alleged negligence was so clear as to constitute negligence as a matter of law where the defendant attorney failed to inform his client of the status of his case and any unfavorable decision, and the necessary filing of a notice of appeal in a timely fashion. *Harris v. Rossi*, 2018-Ohio-4573, [123 N.E.3d 284,] ¶ 50 [(11th Dist.)] and *Brust v. Kravitz*, 10[th] Dist. [Franklin No. 16AP-201,] 2016-Ohio-7871.

{¶ 42} We also conclude the breach was obvious and now proceed to discuss the element of damage.

{¶ 43} "A plaintiff seeking damages in a legal malpractice case must show that the alleged malpractice caused the damages." *RevoLaze LLC v. Dentons US LLP*, 8th Dist. Cuyahoga No. 109742, 2022-Ohio-1392, ¶ 115, citing *Fabec v. Frederick & Berler, L.L.C.*, 8th Dist. Cuyahoga No. 110562, 2022-Ohio-376, ¶ 22, citing *Montali v. Day*, 8th Dist. Cuyahoga No. 80327, 2002-Ohio-2715, ¶ 37. In addition, the evidence must establish a calculable financial loss because one of the essential elements of a legal malpractice claim is a causal connection between the conduct complained of and resulting in damages or loss. *Id.*, citing *DeMeo v. Provident Bank*, 8th Dist. Cuyahoga No. 89442, 2008-Ohio-2936, ¶ 61, citing *Nu-Trend Homes v. Law Offices of DeLibera, Lyons & Bibbo*, 10th Dist. Franklin No. 01AP-1137, 2003-Ohio-1633, ¶ 42.

{¶ 44} In this matter, it is undisputed that Buehner performed his contractual duty by paying Cheselka a flat fee of $10,000. Cheselka admitted that he was paid the agreed upon compensation. Additionally, we have discussed above how Cheselka breached the agreement by, among other things, failing to inform Buehner of the adverse ruling on the motion for new trial, and by failing to file the notice of appeal.

{¶ 45} Further, because of Cheselka's breach, Buehner incurred legal fees and expenses in excess of $164,000. A review of the record reveals that Buehner retained Randazzo on September 12, 2016 and entered into a fee agreement that

required him to pay Randazzo an hourly rate of $385 for all work performed. The record reveals that Randazzo filed several motions, briefs, and the pivotal appeal on Buehner's behalf.

{¶ 46} Buehner averred in his affidavit, attached to the motion for summary judgment that "[a]s a result of the appeal filed by Mr. Randazzo, the Eighth District Court of Appeals reversed [the trial court's] ruling and determined that the State of Ohio improperly withheld exculpatory evidence from my defense counsel in 2002 and remanded for a hearing on materiality only." Buehner further averred that "[t]o date, I have incurred in excess of $164,403.56 in legal fees and expenses for my representation by Randazzo Law, LLC." In granting Buehner's motion for summary judgment, the trial court stated in relevant part

> Since there were multiple legal proceedings involved in this case as well as the cost of this action, the alleged damages claim in the form of attorney fees owed to Buehner's attorney is certainly reasonable. There has been no contrary evidence established by Cheselka. Cheselka is not allowed to merely deny the fact of damages but must put forth evidence or affidavits to refute the amount claimed. Cheselka herein has failed to do so in that the Court has granted a default judgment for failure to prosecute the claims in this case therefore, Cheselka has forfeited his right to litigate the issues of damages. This is a reasonable sanction under the circumstances in this case as the Court has so found.

{¶ 47} The trial court's determination is supported by the record, which reveals that Cheselka filed a request that Buehner specifically state the amount of damages sought. Buehner complied with the request, detailing the legal fees and expenses incurred in five different case numbers including the underlying criminal cases and four separate appellate actions. As the trial court aptly noted, "[t]here has

been no contrary evidence established by [Cheselka]." Having put forth no evidence to contradict the damages Buehner sought, Cheselka has now forfeited the right to challenge the measure of damages. Undoubtedly, Buehner has established the causal connection between Cheselka's actions and the resulting damage by presenting evidence of calculable financial losses.

{¶ 48} Based on our de novo review, we conclude that Buehner met his burden of demonstrating that no material issues of fact exist for trial. As such, the trial court properly granted Buehner's motion for summary judgment on the claim for legal malpractice.

{¶ 49} Accordingly, we overrule the first assignment of error.

{¶ 50} In the second assignment of error, Cheselka argues that Buehner's claim for legal malpractice was barred by the statute of limitation.

{¶ 51} R.C. 2305.11(A) provides that an action for legal malpractice against an attorney or a law firm shall be commenced within one year after the cause of action accrued.

> "'Under R.C. 2305.11(A), an action for legal malpractice accrues and the statute of limitations begins to run when there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later.'"

(Emphasis deleted.) *Shaut v. Roberts*, 2022-Ohio-817, 186 N.E.3d 302, ¶ 8 (8th Dist.), quoting *Smith v. Conley*, 109 Ohio St.3d 141, 2006-Ohio-2035, 846 N.E.2d 509, ¶ 4, quoting *Zimmie v. Calfee, Halter & Griswold*, 43 Ohio St.3d 54, 538 N.E.2d

398 (1989), syllabus, citing *Omni-Food & Fashion, Inc. v. Smith*, 38 Ohio St.3d 385, 528 N.E.2d 941 (1988).

{¶ 52} The statute-of-limitations analysis in a legal malpractice case requires two factual inquiries: "(1) When should the client have known that he or she may have an injury caused by his or her attorney? and (2) When did the attorney-client relationship terminate?" The later of those dates "is the date that starts the running of the statute of limitations." *Smith* at ¶ 4.

{¶ 53} In resolving the first assignment of error, we concluded that, contrary to Cheselka's belief, the attorney-client relationship did not terminate when Randazzo entered an appearance in the criminal case. Instead, the record reveals that on October 5, 2018, Randazzo sent a letter to Cheselka advising Cheselka that his representation of Buehner was terminated. The letter also requested that Cheselka deliver Buehner's client file to Randazzo. Cheselka did not dispute receiving the letter of termination. Notably, Cheselka delivered Buehner's file to Randazzo on March 27, 2021.

{¶ 54} As previously stated, Buehner filed this legal malpractice action on October 2, 2019. We find the action commenced within the time frame contemplated by R.C. 2305.11(A). Buehner filed the complaint within one-year of the later of the two dates employed in the factual inquiries in a statute-of-limitation analysis.

{¶ 55} Here, it is undisputed that Cheselka never withdrew from the case. Thus, the attorney-client relationship was still in existence until it was terminated

by the letter dated October 5, 2018. Consequently, we conclude that the legal malpractice action was not time-barred.

**{¶ 56}** Accordingly, we overrule the second assignment of error.

**{¶ 57}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, JUDGE

ANITA LASTER MAYS, P.J., and
CORNELIUS J. O'SULLIVAN, JR., J., CONCUR