[Cite as *Pincus v. Dubyak*, 2024-Ohio-5390.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| ARLENE PINCUS, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 113681 |
| v. | | |
| ROBERT DUBYAK, ET AL., | : | |
| Defendants-Appellees. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, REVERSED IN
PART, AND REMANDED
**RELEASED AND JOURNALIZED:** November 14, 2024

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-19-910187

## *Appearances:*

Kaufman, Drozdowski & Grendell, LLC, and Evan T.
Byron, *for appellant*.

Reminger Co., LPA, Brianna M. Prislipsky, Andrew J.
Dorman, and Holly Marie Wilson, *for appellees*.

MICHAEL JOHN RYAN, J.:

{¶ 1} This case is in front of this court for the second time on appeal. Plaintiff-appellant Arlene Pincus ("Arlene") appeals the trial court's decision to grant summary judgment in favor of defendants-appellees, Robert Dubyak and Dubyak Nelson, LLC (collectively, "Dubyak"), in the legal malpractice case Arlene filed against Dubyak. After a thorough review of the law and the facts, we reverse the trial court's judgment in part and remand the case for further proceedings.

I. Procedural History and Factual Background

{¶ 2} Pincus Bakery, Inc., was originally owned and operated by Arlene's in-laws. In 1999, Arlene's mother-in-law transferred ownership to her sons, David (who was Arlene's husband) and Steven Pincus, both of whom worked at the bakery.

{¶ 3} In 2013, David suffered a stroke and stopped working at the bakery. Arlene had power of attorney over David. In 2014, Arlene retained Dubyak and his law firm. Two cases were filed thereafter; the first case was filed in Cuyahoga County Probate Court regarding David's mother's estate and is impertinent to this appeal. The second case was filed in the general division of the Cuyahoga County Common Pleas Court and named "Arlene Pincus, as legal representative and next friend of her husband David Pincus" as the plaintiff; Steven was the named defendant. *See Pincus v. Pincus*, C.P. No. CV-14-837153 ("the bakery case"). The complaint alleged that Steven took money from the bakery without the authority to do so.

{¶ 4} On April 14, 2015, Steven filed a counterclaim and third-party complaint against Arlene, individually, alleging that she improperly took more than $100,000 from the bakery.

{¶ 5} The record reflects that during the bakery case litigation, Arlene and Dubyak discussed motioning the court to request a receiver in the bakery case because Arlene was worried that Steven was draining the bakery accounts. No motion was ever filed.

{¶ 6} On October 17, 2016, the parties reached a settlement in the bakery case resolving all claims, including those against Arlene individually. The settlement resulted in a $500,000 consent judgment in favor of David and against Steven and the bakery and a dismissal with prejudice of the counterclaim and third-party complaint against Arlene. To date, neither Arlene in her individual nor her representative capacity have been able to collect on the settlement — the bakery closed soon after the parties reached their settlement agreement.

{¶ 7} On January 16, 2017, new counsel entered an appearance as counsel of record for the plaintiff in the bakery case. Arlene contends that this date is the date Dubyak was terminated from representing her. Dubyak counters that this date is the date he was terminated from David's representation, but his representation of Arlene ended when the bakery case was settled and the counterclaim against her was dismissed on October 17, 2016. It is worth noting, however, that Dubyak did not move to withdraw from the case until February 2, 2017.

{¶ 8} On January 16, 2018, Arlene filed a pro se complaint against Dubyak for legal malpractice; she filed the complaint both individually and as legal representative for David. *See Pincus v. Dubyak, et al.*, C.P. No. CV-18-891628. On January 26, 2018, Arlene voluntarily dismissed the complaint without prejudice. On January 25, 2019, Arlene refiled the complaint, again both individually and as legal representative for David. *See Pincus v. Dubyak, et al.*, C.P. No. CV-19-910187.

{¶ 9} Dubyak filed an answer and counterclaim, arguing that the statute of limitations barred Arlene's claim and that Arlene lacked standing. Dubyak's counterclaim sought $33,162.51 for unpaid legal fees and asserted claims for breach of contract, quantum meruit, and unjust enrichment.

{¶ 10} Dubyak filed a motion for judgment on the pleadings pursuant to Civ.R. 12(C). Dubyak argued that Arlene had no legal authority to file a pro se complaint on David's behalf; therefore, the January 2018 complaint did not trigger Ohio's saving statute found in R.C. 2305.19(A) and the January 2019 refiled complaint was untimely. Dubyak also maintained that Arlene was not a party to the bakery case in her individual capacity except as to the previously dismissed counterclaim. Therefore, Dubyak argued, the one-year statute of limitations barred Arlene's malpractice claim as asserted in her individual capacity.

{¶ 11} Arlene filed a combined motion for leave to file an amended complaint and response to Dubyak's motion for judgment on the pleadings. Arlene argued that as David's power of attorney, she had the right to hire Dubyak to pursue the bakery case, and that she was Dubyak's client, even after the counterclaim

against her was dismissed in October 2016. She argued in the alternative that she had standing to bring the legal malpractice claim as a third party because she was in privity with David or because Dubyak acted with malice. Arlene also filed a first amended complaint.

{¶ 12} The trial court agreed with Dubyak and, in May 2019, granted Dubyak's motion for judgment on the pleadings. In its journal entry, the trial court explained that Arlene's January 2018 complaint was a "nullity" because she filed it "as a pro se litigant who lacked standing," and the statute of limitations for the legal malpractice claim had expired. The trial court also denied Arlene's motions for leave to file the first and second amended complaints because they "cannot cure the nullity created when [Arlene] filed as a pro se litigant[.]"

{¶ 13} In June 2019, Arlene filed a motion for relief from judgment pursuant to Civ.R. 60(B). She argued that the malpractice claim brought in her individual capacity should not have been dismissed because she had standing to pursue it and because she timely filed it. Dubyak filed an opposition, and the trial court denied Arlene's motion without opinion.

{¶ 14} In July 2019, Arlene filed a motion for reconsideration or in the alternative for Civ.R. 54(B) certification. Dubyak filed an opposition, and the trial court denied Arlene's motion without opinion.

{¶ 15} In September 2020, Dubyak filed a motion for summary judgment on the counterclaim for unpaid legal fees and attached the fee agreements as exhibits. Arlene filed an opposition, and Dubyak filed a reply. In October 2020,

Arlene filed a renewed motion for reconsideration of the judgments granting Dubyak's motion for judgment on the pleadings and denying her motions for leave to amend the complaint based on "new evidence," that being the fee agreements attached to Dubyak's summary judgment motion. Dubyak filed an opposition.

{¶ 16} In November 2020, the trial court granted Dubyak's motion for summary judgment on the counterclaim for unpaid legal fees and denied Arlene's renewed motion for reconsideration.

{¶ 17} Arlene appealed, challenging the trial court's order granting Dubyak's motion for judgment on the pleadings as to the malpractice claim in her individual capacity and the trial court's order denying her motions for leave to amend her complaint.

{¶ 18} On appeal, Arlene conceded that her January 2018 pro se complaint was a "legal nullity" as it related to her claim on behalf of David, but maintained that she also brought the malpractice claim in her individual capacity, which she could do pro se. She argued that her January 2018 complaint triggered Ohio's saving statute so her complaint filed in January 2019 was therefore not untimely. She further argued that she had standing to bring the malpractice claim in her individual capacity because (1) she had an attorney-client relationship with Dubyak that did not terminate until January 17, 2017, or (2) she had third-party standing because she was in privity with David, or (3) she had third-party standing because Dubyak acted with malice. *Pincus v. Dubyak*, 2021-Ohio-3034, ¶ 16 (8th Dist.) ("*Pincus I*").

{¶ 19} This court found that based on the allegations in Arlene's amended complaints, she "manifested an intention to obtain legal services from Dubyak, and she reasonably assumed that an attorney-client relationship had been established between her and Dubyak." *Id.* at ¶ 31. This court reasoned that as of the pleading stage, Arlene had satisfied her burden to establish the existence of an attorney-client relationship between her and Dubyak from May 2014 to January 17, 2017. *Id.* The panel determined that the trial court erred in granting Dubyak's motion for judgment on the pleadings as to Arlene's malpractice claim in her individual capacity. *Id.* at ¶ 31 – 32. The panel further found that the trial court abused its discretion when it denied Arlene's motions for leave to amend her complaint. *Id.* at ¶ 32. The case was remanded to the trial court.

{¶ 20} Shortly before the *Pincus I* decision was released, David passed away. On November 23, 2021, Arlene filed an amended complaint, again suing both individually and as David's legal representative. Dubyak responded with a motion for judgment on the pleadings based upon Arlene's failure to substitute David's estate as a party. Arlene opposed that motion, and Dubyak's motion for judgment on the pleadings was ultimately denied by the trial court.

{¶ 21} On July 31, 2023, Dubyak filed a motion for summary judgment, arguing that Arlene lacked standing, that her claims were barred by the third-party legal malpractice doctrine, and that both her and David's claims were time barred as a matter of law.

{¶ 22} Arlene also moved for summary judgment, asking for a determination as to liability, relying upon an expert report wherein the expert opined that Dubyak negligently failed to move the court to appoint a receiver. Dubyak opposed the motion, citing his own expert's opinion.

{¶ 23} The trial court held a hearing on the motions, after which it granted Dubyak's motion for summary judgment and denied Arlene's motion for summary judgment. In its judgment entry, the trial court found that both Arlene's and David's claims were barred under R.C. 2305.11(A), because Arlene's January 2018 pro se complaint was a "legal nullity," and Arlene was not authorized to file a lawsuit on David's behalf. The trial court reasoned that the statute of limitations for Arlene's individual claims began to run from the October 2016 judgment, when all claims against Arlene were dismissed with prejudice; therefore, the claims were time barred.

{¶ 24} The trial court further found that Arlene lacked standing to file her November 2021 amended complaint because her husband's death terminated the power of attorney and any authority Arlene may have had to act on his behalf. The court explained that Arlene did not have standing to bring claims because she lacked privity. In addition, the court found that Arlene failed to present evidence of malice.

{¶ 25} Arlene filed a timely notice of appeal and raises one assignment of error for our review, in which she claims that the trial court erred in granting summary judgment in favor of Dubyak. Arlene does not challenge the trial court's

findings in relation to claims she made on behalf of David; therefore, we summarily affirm the trial court's judgment in that respect.

## II. Law and Analysis

### Standard of Review

{¶ 26} We review an appeal from summary judgment under a de novo standard. *Cleveland Elec. Illum. Co. v. Cleveland*, 2020-Ohio-4469, ¶ 13-15 (8th Dist.), citing *Baiko v. Mays*, 140 Ohio App.3d 1 (8th Dist. 2000). Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate. *Cleveland Elec. Illum. Co.* at *id.*, citing *N.E. Ohio Apt. Assn. v. Cuyahoga Cty. Bd. of Commrs.*, 121 Ohio App.3d 188 (8th Dist. 1997). Civ.R. 56(C) provides that before summary judgment may be granted, a court must determine that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party.

{¶ 27} Civ.R. 56(C) also provides an exclusive list of materials that parties may use to support a motion for summary judgment:

> Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule.

{¶ 28} The moving party carries the initial burden of setting forth specific facts that demonstrate his or her entitlement to summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293 (1996). If the movant fails to meet this burden, summary judgment is not appropriate, but if the movant does meet this burden, summary judgment will be appropriate only if the nonmovant fails to establish the existence of a genuine issue of material fact. *Id*. at 293.

**Legal Malpractice**

{¶ 29} The elements of a claim for legal malpractice are "(1) an attorney-client relationship, (2) professional duty arising from that relationship, (3) breach of that duty, (4) proximate cause, (5) and damages*." Benesch, Friedlander, Coplan & Aronoff, LLC v. Jochum*, 2019-Ohio-2321, ¶ 15 (8th Dist.).

{¶ 30} A claim for legal malpractice must be brought within one year of either the termination of the attorney-client relationship or occurrence of a cognizable act, whichever is later. R.C. 2305.11(A) provides that an action for legal malpractice against an attorney or a law firm shall be commenced within one year after the cause of action accrued.

> "'Under R.C. 2305.11(A), an action for legal malpractice accrues and the statute of limitations begins to run when there is a cognizable event whereby the client discovers or should have discovered that his [or her] injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later.'"

(Emphasis deleted.) *Buehner v. Cheselka*, 2022-Ohio-2687, ¶ 51 (8th Dist.), quoting *Shaut v. Roberts*, 2022-Ohio-817, ¶ 8 (8th Dist.).

{¶ 31} The statute-of-limitations analysis in a legal malpractice case requires two factual inquiries: "(1) When should the client have known that he or she may have an injury caused by his or her attorney? and (2) When did the attorney-client relationship terminate?" The later of those dates "is the date that starts the running of the statute of limitations." *Buehner* at ¶ 52, citing *Smith v. Conley*, 2006-Ohio-2035, ¶ 4.

{¶ 32} As stated in *Pincus I*, whether the statute of limitations bars Arlene's complaint depends on whether she was in an attorney-client relationship with Dubyak from May 2014 to January 2017, or if Dubyak had an attorney-client relationship with only David during this timeframe. *See Pincus I* at ¶ 25. If Arlene failed to allege facts that would establish an attorney-client relationship between her and Dubyak that did not terminate until January 2017, she can bring this action only if she was in privity with David or if Dubyak acted with malice. *Id.*

{¶ 33} In *Pincus I*, this court determined that, as of the pleading stage where the court construes the nonmoving party's allegations as true, Arlene had satisfied her burden to establish the existence of an attorney-client relationship between her and Dubyak from May 2014 to January 17, 2017. *Id.* at ¶ 31.

{¶ 34} To reiterate the pertinent dates, we note that Arlene initially filed her pro se complaint on January 18, 2018. She dismissed that complaint on January 26, 2018, without prejudice, and refiled it on January 26, 2019. She argues that her initial January 2018 complaint triggered Ohio's saving statute, R.C. 2305.19(A), and that she had standing to bring the malpractice claim in her individual capacity

because (1) she had an attorney-client relationship with Dubyak that did not terminate until January 17, 2017, or (2) she had third-party standing because she was in privity with David, or (3) she had third-party standing because Dubyak acted with malice.

**Evidence of Attorney-Client Relationship**

{¶ 35} Arlene alleged that she had an attorney-client relationship with Dubyak from May 2014 to January 17, 2017. Dubyak, on the other hand, insists his relationship with Arlene was solely in her capacity as the power of attorney for David or, as to her individually, he only represented her to defend against Steven's counterclaims and that representation ended when the case was settled and the counterclaim against her was dismissed in October 2016, which means her complaint was outside the statute of limitations for legal malpractice claims. The trial court determined that Arlene's claims were time barred because Dubyak represented her individually only on the counterclaim and therefore his representation of her ended when the case was settled in October 2016. We disagree and find that there was an attorney-client relationship between Arlene and Dubyak from May 2014 to January 17, 2017.

{¶ 36} In his July 2023 motion for summary judgment, Dubyak attached his letters of representation. The first letter, dated May 12, 2014, was addressed solely to Arlene and reads, in part:

> This letter, and your signature below, will confirm your agreement to retain Dubyak Connick Sammon & Bloom, LLC in representing you

pertaining to issues (1) in the matter of the Estate of Hellen Pincus and (2) partnership issues with Steve Pincus.

{¶ 37} The letter was signed by Dubyak. In the acknowledgment section, "Arlene Pincus" is typed out on the signature block and Arlene signed the agreement "Arlene Pincus" on May 13, 2014. Neither David nor Arlene in her capacity as David's representative are mentioned in the letter.

{¶ 38} In a subsequent May 22, 2014 letter, addressed to "David and Arlene Pincus," Dubyak clarified his representation, stating the following:

> This letter is in follow-up to my firm's original representation letter dated May 12, 2014. In the original letter, only Arlene was listed as the firm's client. To clarify the firm's representation, this revised letter, and your signature below, *will confirm the agreement of both of you to retain* Dubyak Connick Sammon & Bloom, LLC in representing you pertaining to issues (1) in the matter of the Estate and Trust of Hellen Pincus . . . and (2) partnership issues with Steve Pincus.

(Emphasis added).

{¶ 39} The acknowledgment section states:

### ACKNOWLEDGMENT

The above accurately reflects my representation agreement with Dubyak Connick Sammon & Bloom, LLC, and I accept the terms and conditions set forth above.

{¶ 40} "Arlene Pincus," and "Arlene Pincus, Attorney-in-fact for David Pincus" are typed out on the signature block and Arlene signed "Arlene Pincus" at each signature block, executing it on May 23, 2014.

{¶ 41} In a November 6, 2014 letter to counsel for Steven, Dubyak refers to his clients as "David and Arlene Pincus." Arlene also refers to Dubyak's fee bills,

which were addressed to Arlene personally; the bills were not sent to David or Arlene in her representative capacity.

{¶ 42} Dubyak contends that he only represented Arlene in her capacity as David's representative and points to the complaint filed in the bakery case, which does not name Arlene as a plaintiff in her individual capacity. However, the exhibits listed above evidence that Dubyak was representing Arlene prior to the filing of the complaint and counterclaim against her and continued that representation until at least January 17, 2017 (again, Dubyak did not file his motion to withdraw in the bakery case until February 2, 2017).

{¶ 43} Dubyak also contends that because Arlene conceded that the 2018 complaint was a legal nullity as to David, then the entire complaint was a legal nullity. Dubyak cites this court's decision in *Baon v. Fairview Hosp.*, 2019-Ohio-3371, ¶ 28 (8th Dist.), in which this court found that a pro se complaint filed in a wrongful death action was a legal nullity. This court noted that "[u]nder Ohio law, a non-attorney personal representative of an estate may not litigate claims on behalf of the estate pro se because allowing a pro se litigant to represent others would constitute the unauthorized practice of law." *Id*. at ¶ 20, quoting *Kinasz v. Southwest Gen. Health Ctr.*, 2014-Ohio-402. This court concluded that the pro se plaintiff could not "cure" his action by subsequently retaining counsel and that his action was therefore not timely.

{¶ 44} *Baon* is distinguishable. Arlene's complaint is for legal malpractice, and she is not prohibited from filing a pro se complaint for her own claim. *See, e.g.,*

*DiPaolo Indus. Dev., LLC v. Blair & Latell Co.*, 2014-Ohio-4317, ¶ 15 (11th Dist.) (holding that a nonlawyer plaintiff filing a lawsuit for legal malpractice on behalf of a corporation was a legal nullity, but plaintiff's own pro se claim was permitted).

{¶ 45} In light of the above, we find that Arlene established that she and Dubyak had an attorney-client relationship from May 2014 to January 17, 2017. Therefore, she has established that element of a legal malpractice claim. The trial court erred in granting summary judgment to Dubyak on that ground.

{¶ 46} Because we have found that Arlene established an independent attorney-client relationship with Dubyak, we need not consider whether she had standing to file the 2018 complaint as a third party based on David's attorney-client relationship with Dubyak or whether Dubyak acted with malice.

**Claim for Legal Malpractice**

{¶ 47} As mentioned, in order to succeed on a claim for legal malpractice, Arlene must show the existence of an attorney-client relationship, that Dubyak had a professional duty to her arising from that relationship, that he breached that duty, and that his actions were the proximate cause of her damages. *See Benesch, Friedlander, Coplan & Aronoff, LLC*, 2019-Ohio-2321, at ¶ 15. Arlene has established the first element — she has standing through her attorney-client relationship with Dubyak and her complaint was not untimely filed.

{¶ 48} As to the remaining elements for a legal malpractice claim, the trial court did not address these elements in its opinion. Through a de novo review of the

record, we conclude that there are genuine issues of material fact precluding summary judgment.

{¶ 49} Arlene alleged that Dubyak breached his duty as her attorney by failing to motion to have a receiver appointed in the bakery case and that failure was the proximate cause of her damages. The trial court acknowledges that Dubyak represented Arlene in her individual capacity concerning that counterclaim and third-party complaint filed against her, individually, in the bakery case. The court opined that "[n]o evidence exists that Arlene suffered any damages caused by Defendant Dubyak's representation of her concerning the counterclaim and third-party complaint." However, Arlene's complaint for malpractice spans the entire bakery case, not just the counterclaim and third-party complaint against her.

{¶ 50} In a report authored by John Phillips, Esq., dated June 28, 2023, and attached to Arlene's motion for summary judgment, Phillips opined that Dubyak committed legal malpractice by failing to motion to have a receiver appointed in the bakery case. Phillips further opined that had this motion been filed, (1) the trial court would have appointed a receiver and (2) the bakery would not have closed, and (3) the $500,000 consent judgment obtained in the bakery case would have been collectible. Phillips concluded that Dubyak's failure to move the court to appoint a receiver was the proximate cause of Arlene's damages.

{¶ 51} Dubyak counters that a receiver would not have been helpful in the bakery case. In his deposition, Dubyak testified that he had conversations with Arlene regarding moving for a receiver and that he did not think it was appropriate

given Arlene's "theft from the bakery, the exposure for tax liability, and the cost of the receivership, etc." According to Dubyak: "We discussed it, we discussed the pros and cons, and we ultimately decided not to seek the appointment of a receiver."

{¶ 52} In a report authored by Tim Collins, Esq., dated August 23, 2023, and attached to Dubyak's motion for summary judgment, Collins opined that Dubyak did not commit professional malpractice. According to Collins, it would not have been beneficial for a receiver to have been appointed to the bakery case because Arlene herself was draining bakery accounts and the bakery had not paid several years worth of taxes so any recovered funds would have been offset by what was owed to tax authorities.

{¶ 53} At this juncture, we cannot definitively say whether Dubyak breached his duty as Arlene's counsel and whether the breach was the proximate cause of her damages. These are factual considerations for a jury.

{¶ 54} The sole assignment of error is sustained. The trial court's judgment granting summary judgment in favor of Dubyak as to claims Arlene brought on behalf of David is unopposed and affirmed. The trial court's judgment granting summary judgment in favor of Dubyak as to the claims brought by Arlene individually is reversed.

{¶ 55} Judgment affirmed in part, reversed in part, and case remanded.

It is ordered that appellant and appellees share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHAEL JOHN RYAN, JUDGE

EMANUELLA D. GROVES, P.J., and
ANITA LASTER MAYS, J., CONCUR